# EXHIBIT 1

Law Division Motion Section Initial Case Management Dates (Law Division Zoom Links will be heard in person;
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 6/25/2025 9:00 AM

FILED
4/22/2025 4:21 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L005396
Calendar, W
32387680

FILED DATE: 4/22/2025 4:21 PM    2025L005396

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## LAW DIVISION

| | |
|---|---|
| LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, <br><br> Plaintiff, <br><br> v. <br><br> HEALTH CARE SERVICE CORPORATION, DOES 1 THROUGH 25, INCLUSIVE, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 2025 L XXXXX

COMMERCIAL CALENDAR

JURY TRIAL DEMANDED

## <u>PLAINTIFF LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD'S COMPLAINT AT LAW</u>

1.     Plaintiff, Lucile Salter Packard Children's Hospital at Stanford, (hereinafter collectively "Plaintiff" or "LSPCH") by and through its attorneys, LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, for its Complaint at Law ("Complaint") against HEALTH CARE SERVICE CORPORATION (hereinafter "HCSC") (d/b/a Blue Cross Blue Shield of Illinois, Blue Cross Blue Shield of Oklahoma, and Blue Cross Blue Shield of Texas), and DOES 1 THROUGH 25, INCLUSIVE, upon personal information as to their own activities and upon information and belief as to the activities of others and all other matters, and states as follows:

### <u>INTRODUCTION</u>

2.     This is an action against HCSC for breach of implied-in-fact contract and, in the alternative, *quantum meruit* arising from a business relationship between LSPCH and HCSC. By this action, LSPCH seeks compensatory damages, interest, and any other relief this Court deems equitable and just.

Firm ID. #62848

## **PARTIES**

3.       Plaintiff Lucile Salter Packard Children's Hospital at Stanford is a non-profit public benefit corporation organized and existing pursuant to the laws of the State of California. LSPCH provided medical care to Patients (as such term is defined herein), including the Patients at issue herein, who were HCSC beneficiaries when such medical care was provided. LSPCH has its principal place of business in the City of Palo Alto, County of Santa Clara, State of California.

4.       HCSC is a domestic insurance company, incorporated in the state of Illinois, with its principal office located in the City of Chicago, County of Cook, State of Illinois. HCSC is registered with the Illinois Department of Insurance with an active status.

5.       LSPCH is unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants DOES 1 through 25, inclusive, and therefore sues such defendants by such fictitious names. LSPCH will seek leave of the Court to amend this Complaint to allege its true names and capacities when ascertained.

6.       HCSC and DOES 1 through 25, inclusive, shall be collectively referred to as "HCSC" or "Defendants."

7.       Defendants, each of them, at all relevant times, have transacted business in the State of Illinois. The violations alleged within this Complaint have been and are being carried out in the State of Illinois.

8.       LSPCH is informed, believes and thereon alleges that, at all relevant times, each of the Defendants, including the defendants named "Doe," was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of such agency, employment, joint venture, or partnership authority, and/or is in some other way

FILED DATE: 4/22/2025 4:21 PM    2025L005396

Firm ID. #62848

FILED DATE: 4/22/2025 4:21 PM    2025L005396

responsible for the acts of one or more of the other defendants.

## JURISDICTION AND VENUE

9.      Jurisdiction over this matter exists under 735 ILCS 5/2-209 because HCSC is a resident of the State of Illinois, and because it transacts business in Illinois, contracts to insure people(s) in the state. Further, jurisdiction is proper because HCSC's performance of the transactions, formation of the implied-in-fact contract and subsequent breaches of said contracts at issue is substantially connected with the State of Illinois. *Id.*

10.     Venue is proper in the Circuit Court of Cook County pursuant to 735 ILCS 5/2-101 and 5/2-103 because it is the county in which the transactions occur out of which the cause of action arises.

## FACTUAL BACKGROUND

11.     Between the dates of November 4, 2019, and August 9, 2022, LSPCH provided emergent and/or medically necessary treatment to the individuals identified on the spreadsheet attached as Exhibit A to this Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patients") totaling five (5) claims.[1]

12.     Illinois law specifically requires that insurance companies provide coverage (and reimbursement) for emergency care regardless of "whether the emergency services are performed by a preferred or non-preferred provider and the coverage shall be at the same benefit level as if the service or treatment had been rendered by a preferred provider." 215 ILCS 124/10(b)(7); see also 215 ILCS 5/356z.3a(b).

13.     Insurance companies like HCSC receive millions of dollars in premiums collected

---

[1] LSPCH has limited disclosure of patient identification here pursuant to the privacy provisions of the Health Insurance Portability & Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320 et seq., General Information Privacy Act, 410 ILCS 513/15 - 50; and General Administrative Order 18-1.

Firm ID. #62848

from their clients and insureds in exchange for the promise of making benefit payments to healthcare providers for emergency and other medical services rendered to their members.

14. LSPCH is informed and believes and thereon alleges that at all relevant times Patients were enrollees and/or beneficiaries of health plans sponsored, financed, administered, and/or funded by HCSC.

15. Prior to the dates of service set forth in Ex. A ("the Dates of Service"), LSPCH sought and received authorization for treatment from HCSC. HCSC gave authorization reference numbers, or represented that authorization was not required, and approved the medically necessary services rendered to Patients, and approved Patients' admission and or continued hospitalization.

16. On the Dates of Service, LSPCH rendered emergent and/or medically necessary services, supplies and/or equipment to Patients until Patients became stable for discharge from LSPCH.

17. LSPCH is informed and believes, and thereon alleges HCSC is financially responsible for the medically necessary services, supplies, and/or equipment (including, but not limited to, emergency care) rendered to the Patients on the Dates of Service.

18. LSPCH's usual and customary charges for the medically necessary services, supplies and/or equipment rendered to Patients amounted to $30,068,651.44. Ex. A.

19. LSPCH timely and properly submitted the bills containing said charges for the medically necessary services, supplies, and/or equipment rendered to Patients to HCSC for payment.

20. Rather than properly pay LSPCH for the medically necessary services, supplies, and/or equipment LSPCH rendered to the Patients, HCSC underpaid, issuing payments of $9,901,446.67. Ex. A. To date, HCSC owes LSPCH no less than $4,734,902.58, exclusive of

FILED DATE: 4/22/2025 4:21 PM    2025L005396

interest. Ex. A.

21.     HCSC failed to remit complete payment to LSPCH for the medically necessary services, supplies, and/or equipment rendered to Patients, despite LSPCH's numerous demands thereof.

24.     HCSC received premium payments for Patients' enrollment and coverage in HCSC's respective health plans.

25.     HCSC accepted the services LSPCH provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

26.     HCSC promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, and collected such premiums.

27.     HCSC has failed, despite LSPCH's repeated demands, to fully and properly pay LSPCH the reasonable and customary value of the medical care rendered to HCSC's beneficiaries as specified in Ex. A. HCSC has unjustly benefitted by not paying fully LSPCH for the reasonable value of such services.

28.     HCSC further unjustly and directly benefitted when it caused LSPCH to treat its beneficiaries, Patients, thus improving HCSC's patient-population risk pool as Patients were now healthier and less of a cost exposure risk to HCSC's insurance funds and allowing HCSC's profits to continue with further guarantee that healthier and still living Patients would ensure that the HCSC would be allowed to collect future premiums for Patients' enrollment in HCSC's health plan.

29.     HCSC further unjustly and directly benefited when it caused LSPCH to treat its beneficiaries, Patients, in the following ways:

Firm ID. #62848

FILED DATE: 4/22/2025 4:21 PM    2025L005396

a) Improved Health Outcomes – HCSC has a vested interest in keeping their enrollees, like Patients, healthy, as healthier individuals require less medical care and incur fewer costs. By encouraging their enrollees, like Patients, to seek medical care when needed, including hospitalization, when necessary, HCSC helped prevent Patients' illness from becoming more serious and costly for HCSC.

b) Better Customer satisfaction – when Patients received quality care at LSPCH, Patients were more satisfied with their health insurance coverage which led to increased loyalty and retention rates for HCSC.

c) Increased Market Share – by offering competitive coverage that includes access to high-quality hospitals, like LSPCH, HCSC was able to attract new customers and retain existing ones. This helped Defendant gain a larger share of the market which led to increased profits and better bargaining power with healthcare providers.

d) Cost Savings – with an improved health outcome of Patients, HCSC saved money by avoiding further future costly treatments, and is therefore able to keep premiums lower for their customers, further increasing HCSC's attractiveness and competitiveness in expanding its patient-pool.

30.    As a direct and proximate result of HCSC's wrongful conduct, LSPCH has suffered damages in an amount to be proven at trial but not less than the sum of $4,734,902.58, exclusive of interest.

## COUNT I – BREACH OF IMPLIED-IN-FACT CONTRACT
### (Against Defendant HCSC and DOES 1 through 25, inclusive)

31.    LSPCH incorporates by reference and re-alleges paragraphs 1-30 of this Complaint here as though set forth in full.

32.    LSPCH and Blue Cross and Blue Shield of California, a licensee of the Blue Cross

FILED DATE: 4/22/2025 4:21 PM   2025L005396

and Blue Shield Association ("BCBS California") – a non-party to this action – have a written contract and that contract informs and guides LSPCH's relationships with other Blue Cross and Blue Shield entities, including HCSC and its subsidiaries including out-of-state Blue Cross and Blue Shield insurers, e.g. Defendant (the "Contract"). The Contract obligated LSPCH to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the national Blue Cross Blue Shield Association, including Defendant.

33.     Although HCSC was not a signatory to or obligee of the Contract, the Contract nevertheless bound LSPCH to treat HCSC's beneficiaries. The Contract also obligated LSPCH to accept as payment in full monies received from Blue Cross Blue Shield Association member companies (such as HCSC) that were made at the discounted rates found within the Contract.

34.     At all relevant times, the Contract between LSPCH and BCBS California bound LSPCH to treat beneficiaries not only of health plans financed, sponsored, and/or administered by HCSC, but also for beneficiaries of health plans financed, sponsored, and/or administered by member companies of the national Blue Cross Blue Shield Association, including Defendant. Thus, even though HCSC never signed the Contract nor is obligated under the Contract, LSPCH must nevertheless medically treat HCSC members and accept payment, in full, from such member companies, with the payment received conforming to the rates found within the Contract.

35.     All HCSC needed to do to take advantage of such medical treatment and discounted rates on behalf of its members/beneficiaries was to issue a "Blue Card" program identification card. The members/beneficiaries could then present their "Blue Card" program identification card to LSPCH at admission, which signaled to LSPCH that it must medically treat such patient pursuant to the terms of the Contract and must accept payments at the discounted rates found in the Contract even though HCSC was not a signatory to the Contract. Otherwise, LSPCH would be

Firm ID. #62848

in violation of its Contractual duties.

36.     In this way — by conduct alone and with no express agreement between them — an implied-in-fact contract arose between LSPCH and Defendant each time one of the Patients presented to LSPCH their HCSC-issued "Blue Card" program identification card and/or otherwise identified himself as being a member/beneficiary of a health plan financed, sponsored, and/or administered by a member company of the national Blue Cross Blue Shield Association.

37.     Each of the Patients specified in Ex. A presented a "Blue Card" program identification card issued by HCSC and/or otherwise identified themself as belonging to a health plan financed, sponsored, and/or administered by HCSC at the time of their hospital stay at LSPCH during the Dates of Service.

38.     Accordingly, each time one of the Patients sought medical treatment at LSPCH and so identified himself, an implied-in-fact contract arose in which LSPCH agreed to render to that Patient all medically necessary services, supplies, and/or equipment needed by that individual and secondarily agreed to accept as payment, in full, monies received from HCSC that were in conformance to the discounted rates found in the Contract. In return, HCSC agreed to pay for such care, albeit at the appropriate discounted rate regarding such care.

39.     LSPCH's usual and customary charges for rendering the medically necessary services, supplies, and/or equipment to the Patients set forth in Ex. A, amounted to $30,068,651.44. At the rates found within the Contract, HCSC should have paid an aggregate amount of $14,636,349.25. However, HCSC only remitted payment of $9,901,446.67, leaving a deficit no less than $4,734,902.58. Ex. A. The underpaid of claims amounted to a breach of its implied-in-fact contracts with LSPCH.

40.     No express written contract between HCSC and LSPCH existed to prescribe

FILED DATE: 4/22/2025 4:21 PM    2025L005396

Firm ID. #62848

payment for the medically necessary services, supplies, and/or equipment rendered to Patients and LSPCH did not perform those services gratuitously. Rather, HCSC knew and understood that LSPCH rendered such treatment with the expectation of being paid the discounted rates under the Contract and through the Blue Card program.

41.     Prior to the treatment rendered by LSPCH, through industry custom and practice, HCSC impliedly agreed, promissorily impliedly expressed and understood that LSPCH would render medically necessary care to HCSC beneficiaries, submit bills for such care to HCSC, and that HCSC would pay the discounted rates under the Contract to LSPCH for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

42.     Specifically, prior to the dates that LSPCH admitted Patients to its facilities for medical services, LSPCH contacted HCSC to verify Patients' healthcare eligibility under a HCSC health plan, to obtain authorization from HCSC for the medical services rendered and to be rendered, and to establish its right to be paid by HCSC the discounted rates under the Contract for such care. In response, HCSC represented that Patients were beneficiaries of one of HCSC's health plans, provided authorization or represented authorization was not required, and approved admissions of the Patients.

43.     At no time did HCSC represent that it would not pay the usual and customary rate, or at the discounted rates under the Contract, to LSPCH for the necessary medical treatment rendered to Patients.

44.     Through LSPCH's treating the Patients, LSPCH's initiating contact with HCSC as described above, and HCSC's instructing the Patients to present their HCSC-issued "Blue Card" membership identification to LSPCH, Plaintiff and Defendant entered into an implied-in-fact

FILED DATE: 4/22/2025 4:21 PM   2025L005396

contract. The Contract was also formed through industry custom and practice, as well as Plaintiff and Defendant's prior and on-going course of conduct *vis-à-vis* the "Blue Card" program. Prior course of conduct included, among other things:

    e)   HCSC's issuance of identification cards to Patients;

    f)   HCSC's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

    g)   LSPCH communicating with HCSC to ask for authorizations to render medical care to Patients and HCSC issuing authorizations to LSPCH for such care;

    h)   HCSC communicating to LSPCH the medical eligibility benefits for Patients without advising LSPCH that HCSC would not make full payment of the discounted rates under the Contract for the services to be provided to Patients;

    i)   HCSC sending written approvals to LSPCH for the specified medical services for Patients;

    j)   HCSC requesting that LSPCH send HCSC clinical information and medical records.

45.    In addition, prior course of conduct by HCSC included LSPCH submitting claims to HCSC and in response, HCSC would properly pay the discounted rates under the Contract of those claims. Over the last five (5) years, LSPCH has billed numerous claims and HCSC has satisfactorily paid on a number of claims submitted by LSPCH in the near identical manner and method as the facts alleged herein.

46.    HCSC directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that LSPCH perform those services on Patients who were beneficiaries of

FILED DATE: 4/22/2025 4:21 PM  2025L005396

HCSC, thus fulfilling HCSC's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between HCSC and Patients was satisfied and HCSC was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by LSPCH. Further, LSPCH directly conferred a benefit upon HCSC because it allowed HCSC to make good on promises made to HCSC's members/beneficiaries to arrange for them to receive timely medical care at a first-rate medical facility.

47.     LSPCH provided medically necessary care to HCSC beneficiaries as described above.

48.     LSPCH properly billed HCSC for the medically necessary services provided to Patients as listed in Ex. A.

49.     HCSC breached the implied-in-fact contract by paying only $9,901,446.67, resulting in an aggregate underpayment of no less than $4,734,902.58 according to the discounted rates under the Contact for the medical services performed by LSPCH.

50.     LSPCH performed all conditions required on its part to be performed in accordance with the terms and conditions of the implied-in-fact contract.

51.     HCSC breached the implied-in-fact contract by underpaying LSPCH for the medically necessary services, supplies and/or equipment rendered or supplied to Patients.

52.     As a direct and proximate result of HCSC's breach of the implied-in-fact contract, LSPCH suffered damages in an amount to be proven at trial but not less than the sum of $4,734,902.58, exclusive of interest.

53.     WHEREFORE, LSPCH prays this Court enter judgment in its favor and against HCSC as follows:

FILED DATE: 4/22/2025 4:21 PM   2025L005396

Firm ID. #62848

FILED DATE: 4/22/2025 4:21 PM   2025L005396

a) For the principal sum of $4,734,902.58;

b) For interest on such principal sum at the rate of nine percent (9%) per annum, pursuant to 215 ILCS 5/368(a)(c) and 815 ILCS 205/4, or in the alternative, for interest on such principal sum at the rate of five percent (5%) per annum, pursuant to 815 ILCS 205/2 and;

c) For such other and further relief as the Court deems just and proper.

## COUNT II – QUANTUM MERUIT (IN THE ALTERNATIVE)
### (Against Defendant HCSC and DOES 1 through 25, inclusive)

54.     LSPCH incorporates by reference and re-alleges paragraphs 1-30 of this Complaint here as though set forth in full.

55.     On the dates of service set forth in Ex. A, LSPCH provided emergency and/or medically necessary care to Patients.

56.     In the alternative, assuming *arguendo* that it is determined that no express or implied-in-fact contract between HCSC and LSPCH existed, or that such a contract cannot be enforced as to the payment for the medically necessary services, supplies and/or equipment rendered to Patients, Plaintiff should nevertheless be fully paid for medical treatment and services rendered under the common law doctrine of *quantum meruit*.

57.     LSPCH did not perform these services gratuitously. Rather, HCSC, by its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, knew and understood that LSPCH rendered such treatment with the expectation of being paid.

58.     Prior to the treatment rendered by LSPCH to Patients, through industry custom and practice, HCSC impliedly agreed and understood that LSPCH would render medically necessary services to HCSC beneficiaries, submit bills for such care to HCSC, and that HCSC would pay the usual and customary value to LSPCH for the necessary medical treatment rendered to Patients,

FILED DATE: 4/22/2025 4:21 PM   2025L005396

rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

59.    Specifically, LSPCH contacted HCSC via phone, facsimile, or electronic communication, to verify Patients' healthcare eligibility under a HCSC health plan, to obtain authorization from HCSC for the medical services rendered and to be rendered, and to establish its right to be paid by HCSC the usual and customary value for such care. In response via phone, facsimile, and/or electronic communication, including but not limited to an electronic portal, HCSC represented that Patients were beneficiaries of one of HCSC's health plans, provided authorization numbers incorporated herein, or represented that authorizations were not required, and approved admission of Patients.

60.    At no time did HCSC represent that it would not pay the usual and customary value to LSPCH for the necessary medical treatment rendered to Patients and at no time did LSPCH represent that it would perform the services gratuitously.

61.    By treating Patients and initiating contact with HCSC as described above, LSPCH provided a benefit to HCSC and HCSC failed to compensate properly LSPCH for that received benefit, despite the prior and on-going course of conduct between LSPCH and HCSC. Prior course of conduct included, among other things:

a)  HCSC's issuance of identification cards to Patients;

b)  HCSC's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c)  LSPCH communicating with HCSC to ask for authorization to render medical care to Patients and HCSC issuing authorization to LSPCH for treatment for that care;

d)  HCSC communicating to LSPCH the medical eligibility benefits for Patients

29755 – LSPCH v. HCSC, et al.                    13                    COMPLAINT AT LAW

Firm ID. #62848

without advising LSPCH that HCSC would not make full payment of the usual and customary value of the services to be provided to Patients;

e) HCSC sending written approval to LSPCH for the specified medical services for Patients, or representing that authorization was not required;

f) HCSC requesting that LSPCH send HCSC clinical information and medical records.

62. In addition, prior course of conduct by HCSC included LSPCH submitting claims to HCSC and in response, HCSC would properly pay the usual and customary value of those claims. Over the last five (5) years, LSPCH have billed numerous claims and HCSC has satisfactorily paid on a number of claims submitted by LSPCH in the near identical manner and method as the facts alleged herein.

63. In addition, HCSC pre-verified Patients' coverage and eligibility and authorized the treatments.

64. HCSC's authorizations for the treatments were implied requests to LSPCH to perform those services on behalf of Patients.

65. LSPCH rendered such treatments after the implied requests for such services by HCSC and LSPCH intended those services to benefit, among others, HCSC.

66. HCSC directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that LSPCH perform those services on Patients who were beneficiaries of HCSC, thus fulfilling HCSC's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between HCSC and Patients was satisfied and HCSC was able to retain rightfully the

FILED DATE: 4/22/2025 4:21 PM   2025L005396

FILED DATE: 4/22/2025 4:21 PM    2025L005396

premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by LSPCH. Further LSPCH directly conferred a benefit upon HCSC because it allowed HCSC to make good on promises made to HCSC's members/beneficiaries to arrange for them to receive timely medical care at a first-rate medical facility.

67.     LSPCH provided medically necessary care to the HCSC beneficiaries as described above.

68.     LSPCH properly billed HCSC for the medically necessary services provided to Patients as listed in Ex. A.

69.     LSPCH is informed and believes and alleges thereon that HCSC expressly instructed its beneficiaries (including Patients) to seek medical care in an emergency from the nearest medical provider and for such beneficiaries to tell the emergency medical provider to send HCSC the bills for such care for payment by HCSC (except for co-payments, deductibles and co-insurance amounts, if any).

70.     After LSPCH rendered the care specified in Ex. A to Patients, LSPCH properly and timely billed HCSC for such care.

71.     The reasonable value of the medical care provided was and is the usual and customary charges of those services, that is the total billed charges in the bills submitted to HCSC by LSPCH for $30,068,651.44. HCSC paid only $9,901,446.67. To date, HCSC owes LSPCH no less than $20,167,204.77. Ex. A.

72.     Despite demands thereon, HCSC has not fully and properly paid LSPCH for the medical care rendered to Patients as set forth in Exhibit A.

73.     LSPCH did not perform these services gratuitously, but rather expected to be paid the reasonable and customary value for such services.

Firm ID. #62848

FILED DATE: 4/22/2025 4:21 PM   2025L005396

74.     HCSC unjustly benefitted by not paying fully LSPCH for the reasonable value of such services. HCSC promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such premiums and then refused despite demands to fully and properly pay LSPCH the reasonable and customary value of the medical care rendered to HCSC's beneficiaries as specified in Ex. A. HCSC accepted the services LSPCH provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

75.     As a direct and proximate result of HCSC's misconduct, LSPCH has suffered damages in an amount to be proven at trial but not less than the sum of $20,167,204.77, exclusive of interest.

76.     WHEREFORE, LSPCH prays this Court enter judgment in its favor and against HCSC as follows:

a)  For the principal sum of $20,167,204.77;

b)  For interest on such principal sum at the rate of nine percent (9%) per annum, pursuant to 215 ILCS 5/368(a)(c) and 815 ILCS 205/4, or in the alternative, for interest on such principal sum at the rate of five percent (5%) per annum, pursuant to 815 ILCS 205/2;

c)  For such other and further relief as the Court deems just and proper.

Dated:  April 22, 2025

Respectfully submitted,

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.

By:     /s/ *Lauren K. Miller*
One of the Attorneys for Plaintiff

Firm ID. #62848

FILED DATE: 4/22/2025 4:21 PM   2025L005396

David F. Mastan, Esq., ARDC #3628951
Marcus R. Morrow, Esq., ARDC #6317812
Lauren K. Miller, Esq., ARDC #6342296
LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
20 N. Clark St., Suite 3300
Chicago, IL 60602
Phone: (312)-626-1870
Fax: (818)-559-5484
dmastan@sacfirm.com
mmorrow@sacfirm.com
lmiller@sacfirm.com

FILED DATE: 4/22/2025 4:21 PM   2025L005396

# EXHIBIT A

FILED
4/22/2025 4:21 PM
Iliana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025L005396

FILED DATE: 4/22/2025 4:21 PM  2025L005396

FC 29755

| No. | File Number | Admit Date | Discharge Date | Provider Name | Issue | Total Charges | Total Paid |
|---|---|---|---|---|---|---|---|
| 1 | 0000072937557 | 6/12/2020 | 9/9/2020 | LUCILE SALTER PACKARD CHILDREN'S HOSPITAL | RATE OF PAYMENT | $ 9,566,404.58 | $ 4,245,303.23 |
| 2 | 000072513140 | 11/4/2019 | 12/17/2019 | LUCILE SALTER PACKARD CHILDREN'S HOSPITAL | RATE OF PAYMENT | $ 4,189,314.30 | $ 1,891,956.07 |
| 3 | 0000073622356 | 6/14/2021 | 8/31/2021 | LUCILE SALTER PACKARD CHILDREN'S HOSPITAL | RATE OF PAYMENT | $ 15,968,031.81 | $ 3,665,123.15 |
| 4 | 0000073292323 | 1/8/2021 | 1/8/2021 | LUCILE SALTER PACKARD CHILDREN'S HOSPITAL | RATE OF PAYMENT | $ 56,694.15 | $ 1,516.48 |
| 5 | 0000074063816 | 8/8/2022 | 8/9/2022 | LUCILE SALTER PACKARD CHILDREN'S HOSPITAL | RATE OF PAYMENT | $ 288,206.60 | $ 97,547.74 |
| | | | | | | $ 30,068,651.44 | $ 9,901,446.67 |

Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 6/25/2025 9:00 AM

CROSS BLUE SHIELD OF TEXAS

| | Underpaid Per Implied-in-Fact | Underpaid Per Quantum Meruit |
|---|---|---|
| | $ 241,220.61 | $ 5,321,101.35 |
| | $ 104,120.50 | $ 2,297,358.23 |
| | $ 4,300,326.81 | $ 12,302,908.66 |
| | $ 26,107.52 | $ 55,177.67 |
| | $ 63,127.14 | $ 190,658.86 |
| | $ 4,734,902.58 | $ 20,167,204.77 |