UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LUCILE SALTER PACKARD CHILDREN'S HOSPITAL AT STANFORD, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 25-cv-04533 |
| v. | ) ) | Judge April M. Perry |
| HEALTH CARE SERVICE CORPORATION, and DOES 1 THROUGH 25, | ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Lucile Salter Packard Children's Hospital at Stanford ("Plaintiff") brings this case against Health Care Service Corporation ("HCSC") (d/b/a Blue Cross Blue Shield of Illinois, Blue Cross Blue Shield of Oklahoma, and Blue Cross Blue Shield of Texas) and Does 1 through 25 (collectively, "Defendants"). Doc. 1-1 ¶ 1. In the complaint, Plaintiff claims that it had an implied-in-fact contract with HCSC to pay certain medical bills (Count I), and in the alternative brings a claim for payment under the equitable theory of *quantum meruit* (Count II). Defendants now move for dismissal of all claims. Doc. 15. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

Plaintiff provides medical care in California and had a contract with Blue Cross and Blue Shield of California ("BCBS California"),[1] a licensee of the national Blue Cross and Blue Shield Association ("BCBS Association"). Doc. 1-1 ¶¶ 3, 32. Under that contract (the "BCBS

---

[1] In Defendants' Memorandum of Law in Support of their Motion to Dismiss, Defendants state that Plaintiff incorrectly identified non-party Blue Cross of California as "Blue Cross and Blue Shield of California." Doc. 16 at 7, n.1. This opinion uses the name included in the complaint.

California Contract"), Plaintiff was obligated to treat patients who were insured through BCBS California as well as patients whose insurance was financed, sponsored, or administered through any member of the BCBS Association. *Id.* ¶ 32. HCSC was a member of the BCBS Association, which allows its members to seek care outside of their state of residence by presenting a "Blue Card" to medical providers. *Id.* ¶ 35.

HCSC is not a signatory to the BCBS California Contract and does not otherwise have an express contract with Plaintiff regarding medical services provided to HCSC beneficiaries. *Id.* ¶¶ 33, 36. However, according to the complaint, the BCBS California Contract "informs and guides [Plaintiff's] relationships with other [BCBS] entities, including HCSC." *Id.* ¶ 32. For example, the complaint alleges that the contract "obligated" Plaintiff to treat HCSC members, *id.*, and in turn "obligated" Plaintiff "to accept as payment in full" from HCSC any payments "made at the discounted rates found within" the contract. *Id.* ¶¶ 33–34.

Between November 4, 2019, and August 9, 2022, Plaintiff treated five individuals with health plans administered or funded by HCSC. *Id.* ¶¶ 11, 14. Prior to that treatment, Plaintiff contacted HCSC to verify whether the services were approved. *Id*. ¶ 15. In response, HCSC either gave authorization reference numbers to Plaintiff or represented that authorization was not required and approved the services as medically necessary. *Id*. HCSC did not make any representations that "it would not pay the usual and customary rate, or at the discounted rates under the [c]ontract." *Id.* ¶ 43. Plaintiff later submitted claims for these services in the total amount of $30,068,651.44, based on "usual and customary" prices. *Id.* ¶¶ 18–19. In response, HCSC issued partial payments of $9,901,446.67. *Id.* ¶ 20.

Plaintiff now seeks additional payments from HCSC in the aggregate amount of $4,734,902.58, which reflects the discounted rates included in the BCBS California Contract. *Id.*

2

¶ 49. In the alternative, Plaintiff seeks the total alleged outstanding balance of $20,167,204.77. *Id.* ¶ 71.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendants argue for dismissal of all claims because: (1) Plaintiff does not plausibly allege breach of an implied-in-fact contract because (among other reasons) no valid consideration existed to form such contract; and (2) Plaintiff cannot establish a claim for recovery under the theory of *quantum meruit* because an express contract already exists regarding the same subject matter and, further, Plaintiff cannot plausibly allege it rendered a

3

benefit to HCSC by providing medical services to HCSC's insureds. The Court addresses each argument in turn.

### I. Breach of Contract (Count I)

Plaintiff argues that an implied-in-fact contract with HCSC was formed in which Plaintiff agreed to provide medical treatment to HCSC beneficiaries, and in return HCSC agreed to pay for such care at the discounted reimbursement rates set forth in the BCBS California Contract. Specifically, Plaintiff argues that an enforceable contract was formed based upon the parties' "prior and on-going course of conduct," including HCSC's issuance of Blue Cards, providing prior authorizations to Plaintiff for medical care, and proper payment of the discounted rates set forth in the BCBS California Contract for "a number of" prior claims. *Id.* ¶ 44–45. Plaintiff further argues that HCSC's refusal to make proper payment for the five patients at issue in this case constituted breach of the parties' implied contract. For the reasons discussed below, the Court finds that Plaintiff's breach of contract claim is not properly pled due to lack of consideration.

In Illinois, the elements of a breach of implied contract claim are the same as the elements for breach of an express contract. *See Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 883 (7th Cir. 2022) (noting that the only difference between an implied contract and express contract are that an implied contract's terms "are inferred from the conduct of the parties" rather than drawn from a written document). Specifically, in order to successfully plead breach of contract under Illinois law, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Bresney*, 784 F.3d 1154, 1158–59 (7th Cir. 2015). With

4

respect to the first element, a valid and enforceable contract must include an offer, acceptance, and consideration. *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

It is black-letter law that consideration is the "bargained-for exchange of promises or performances and may consist of a promise, an act or a forbearance." *Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1043 (Ill. App. Ct. 2017). Generally, courts do not "inquire into the adequacy of consideration." *Gallagher v. Lenart*, 874 N.E.2d 43, 64 (Ill. 2007). However, there are certain exceptions, including that "[c]onsideration cannot flow from an act performed pursuant to a preexisting legal duty." *Marque*, 83 N.E.3d at 1044. That is, doing (or promising to do) something that one already has to do is not consideration, and, consequently, cannot form a new contract. *Country Mut. Ins. Co. v. Olsak*, 216 N.E.3d 291, 307 (Ill. App. Ct. 2022).

Here, the complaint does not allege that Plaintiff gave HCSC anything more than what Plaintiff was already obligated to give pursuant to the pre-existing BCBS California Contract. Doc. 1-1 ¶¶ 33–34. Specifically, the complaint acknowledges that the BCBS California Contract "obligated [Plaintiff] to medically treat individuals belonging to health plans financed, sponsored, and/or administered by member companies belonging to the [BCBS] Association, including [HCSC]." *Id.* ¶ 32. Because Plaintiff had a pre-existing legal duty to treat individuals receiving coverage from BCBS member companies, its treatment of HCSC's five patients in this case cannot give rise to a separate, implied-in-fact contract with HCSC. *See Nw. Mem'l Healthcare v. Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.*, No. 24-cv-2768, 2025 WL 2785425, at *5 (N.D. Ill. 2025); *Nw. Mem'l Healthcare v. Anthem Blue Cross of California*, No. 24-cv-02941, 2025 WL 2306814, at *3 (N.D. Ill. 2025); *Dignity Health v. Health Care Serv.*

5

*Corp.*, No. 22-cv-6969, Doc. 21 at 2 (N.D. Ill. 2025) (each rejecting nearly identical breach of contract claims for lack of consideration).

Plaintiff responds to HCSC's argument that a pre-existing legal duty does not constitute consideration by stating that "consideration is a detriment" and that it suffered a detriment when it suffered "the lack of full payment while performing services non-gratuitously." Doc. 19 at 7. This confuses the "detriment" inherent in consideration with the "detriment" suffered when an agreement is breached. But they are two different things, and a contract must be formed before it can be breached. Here, HCSC's failure to properly pay is, if anything, a breach. Plaintiff's argument that "absent receipt of proper payment for the medical services, [Plaintiff's] obligation to provide medical services … does not actually exist," *Id.* at 8, n.7, is similarly unavailing given that it has not alleged any facts indicating that the supposed contract included an agreement that HCSC would pay in advance for medical treatment (in other words, that payment was a condition precedent to contract formation). In short, Plaintiff does not identify any consideration it offered to HCSC at the time its alleged implied-in-fact contract was formed that Plaintiff did not already legally owe to HCSC.

Similarly unsuccessful is Plaintiff's argument that its implied-in-fact contract with HCSC is supported by consideration because "a benefit to a third person constitutes consideration." *Id.* at 8. This is true so far as it goes, but only establishes the unremarkable proposition that HCSC and its members may have been third-party beneficiaries of the BCBS California Contract. Plaintiff cites no case law establishing that the consideration already owed to a third-party beneficiary creates an implied contract with that third-party beneficiary. And such a rule would fly in the face of the generally accepted premise that a third-party beneficiary has no independent obligations under the original contract and cannot be sued for breach of that agreement. *Cf.*

*Olson v. Etheridge*, 686 N.E.2d 563, 569 (Ill. 1997) (noting that a third-party beneficiary provides "no consideration for the benefit received" under the original contract); *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 359 (Ill. 2012) ("a contract cannot bind a nonparty.").

For these reasons, Plaintiff has failed to state a claim for breach of an implied-in-fact contract with HCSC. Accordingly, Count I is dismissed.

## II. *Quantum Meruit* (Count II)

Plaintiff argues in the alternative that it is entitled to payment in full for each of the five claims under the equitable theory of *quantum meruit*. Doc. 1-1 ¶ 56. "The term *quantum meruit* means literally 'as much as he deserves' and is an expression that describes the extent of liability on a contract implied in law (also called a 'quasi-contract'); it is predicated on the reasonable value of the services performed." *Archon Constr. Co., Inc. v. U.S. Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017). In short, *quantum meruit* is "a claim for the value of benefits provided without a contract." *See Quantum Meruit*, Black's Law Dictionary (12th ed. 2024). To state a claim of *quantum meruit* under Illinois law, a plaintiff must show "(1) that [it] performed a service to benefit the defendant; (2) [it] performed the service non-gratuitously; (3) the defendant accepted [its] services; and (4) no contract existed to prescribe payment for this service." *Marcatante v. City of Chicago, Ill.*, 657 F.3d 433, 443 (7th Cir. 2011) (citing *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 825–26 (Ill. App. Ct. 2010)).

Defendants first challenge the *quantum meruit* claim by arguing that an express contract already exists regarding the parties' relationship. "Ordinarily, the remedy of unjust enrichment based on a quasi-contract is not available when an express contract exists concerning the same subject matter." *C. Szabo Contracting, Inc. v. Lorig Constr. Co.*, 19 N.E.3d 638, 645 (Ill. App.

7

Ct. 2014); *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008). That said, the Seventh Circuit has concluded that Illinois law does allow for a *quantum meruit* claim against a contract's third-party beneficiary who not only benefitted from the contract but also encouraged that the work be undertaken and then refused to pay. *See Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 739 (7th Cir. 1990).[2] The circumstances of this case are analogous to *Midcoast Aviation*. First, as is discussed above, there is no express contract between these parties. At most, HCSC is a third-party beneficiary of a contract to which it is not bound. Second, rather than passively accepting the benefits of a contract to which it was not bound, the complaint alleges that HCSC took actions to encourage Plaintiff's continued work on its behalf including, for example, corresponding with Plaintiff about its patients, providing authorization numbers, and agreeing that the services were medically necessary. HCSC further fostered in Plaintiff a belief that it would continue to be paid for these services by paying out a number of claims at the contracted-for rate. To the extent *quantum meruit* is meant to provide plaintiffs an avenue for equitable relief, the complaint more than establishes that HCSC has profited unfairly from its own actions.

Defendants also claim that Plaintiff has not adequately alleged it rendered a benefit to HCSC by providing medical services to HCSC insureds. The Court disagrees. Among other things, the complaint alleges that treating HCSC's insureds saved HCSC money in future medical claims by ensuring the patients were treated before their illnesses became more severe, increased HCSC's market share by offering access to high-quality hospitals, and increased

---

[2] Although Illinois courts have not wholeheartedly embraced *Midcoast Aviation*, *see C. Szabo Contracting*, 19 N.E.3d at 646, the Illinois Supreme Court has not disavowed it. It therefore remains binding on this Court. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) (noting that only a decision "by a state's supreme court terminates the authoritative force" of a Seventh Circuit decision such that a district court would be "liberate[d]" from its precedential authority).

HCSC's customer satisfaction. Doc. 1-1 ¶ 29. Accepting these allegations as true and drawing reasonable inferences in Plaintiff's favor, such allegations meet the plausibility threshold of *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

For these reasons, the Court concludes that Count II plausibly states a claim under a theory of *quantum meruit*.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss as to Count I, but denies the motion to dismiss as to Count II.

Dated: February 3, 2026

_____
APRIL M. PERRY
United States District Judge